GEORGE W. SEIBERT v. R. B. RICHARDSON ET AL.

No. 221.

1. **Land Certificate — Duplicate — Ratification of Unauthorized Survey.**—S., a nonresident, owned as assignee a duplicate land certificate, which, without his knowledge or authority, was located in K. county in 1877, the field notes of the survey reciting that it was "made for D. N. T., assignee." In 1873, some one falsely pretending to be agent for another person as owner of the duplicate, filed in the General Land Office a showing to the effect that such duplicate had been lost, and thereupon procured the issuance of another duplicate, which, without the knowledge or authority of S., was located in W. county in 1874. Upon both surveys coming to the knowledge of S., he ratified the one made in W. county, and filed in the Land Office a protest against the issuance of any patent upon the other. *Held*, that the right of S. to the land in W. county could not be prejudiced by the location in K. county, and was superior to a subsequent adverse location made thereon under other certificates.

2. **Same — Survey Within Twelve Months from Date of Application.**—The survey in W. county having been made prior to the statute of 1879, it was prima facie sufficient for S.—the land being still unpatented—to show, as plaintiff in this suit, a return of the field notes to the General Land Office within twelve months from the date of the survey, without proof that the survey had been made within twelve months from the date of the application for such survey.

3. **Same—Irregularity in Issuing Duplicate.**—A mere irregularity in the issuance of a duplicate, such as the want of an affidavit to the proof of publi-

cation of notice of the intended application therefor filed in the Land Office, can not avail a subsequent locator claiming the land under a different title.

**4. Same—Certificate not Invalid Because of Forfeiture of Prior Location.**—Where a prior location of the certificate had been made in 1869, and the survey forfeited for nonreturn of the certificate to the General Land Office, as then required by law, this did not invalidate the certificate itself, which could be subsequently used (in 1874) to appropriate other land.

APPEAL from Wilbarger. Tried below before Hon. G. A. BROWN.

*A. H. Carrigan*, for appellant.—When an original certificate has issued, and the Land Commissioner issues a duplicate in lieu thereof, the manner of the issuance of the duplicate can not be attacked in a collateral proceeding. Bowmer v. Hicks, 22 Texas, 155; Walters v. Jewett, 28 Texas, 192; Capp v. Terry, 75 Texas, 391; Pitts v. Booth, 15 Texas, 453; Johnson v. Smith, 21 Texas, 722.

*Stephens & Huff*, for appellees.—1. When a certificate has once been located and surveyed, it can not be floated and again located elsewhere, unless it is in conflict with an older survey, but the same is a satisfaction of the certificate. Pasch. Dig., arts. 4574, 4575; Adams v. Railway, 70 Texas, 267; Von Rosenberg v. Cueller, 80 Texas, 256.

2. After the Act of August 30, 1856, it was not lawful for the owner of certificate number 108 to float or lift the same; and if it was done, the burden was on appellant to show facts authorizing him to do so, or that he did not do it. Adams v. Railway, 70 Texas, 277.

3. By the law then in force (Paschal's Digest, articles 4574–4576), if the certificate was located it could not be floated; it became a part of the land, a chattel real. If in conflict, and the surveyor or his deputy would give the certificate to that effect, it might be floated or lifted, unless the entry was made upon appropriated land, evidenced by surveyors', County Court, or Land Office record; and in that event, the applicant must stay and fight the prior appropriation, and if it was good, his certificate was forfeited by the judgment of the court. Therefore he could float his certificate for only one reason, and that was when it was in conflict with an older survey, which was not shown by the records of the surveyor, County Court, or Land Office.

4. The Commissioner of the General Land Office, while acting in issuing duplicate certificate, acts as a ministerial and not as a judicial officer. The law authorizing the issuance of duplicates defines the duty with such precision and certainty as to leave nothing to discretion or judgment. Pasch. Dig., arts. 4123, 4124; Commissioner v. Smith, 5 Texas, 479; Decatur v. Paulding, 12 Pet., 497.

5. Issuing a duplicate certificate being a ministerial act, it must be issued according to law; if it is issued against the law it is void, and those

claiming under it acquire no right. In this case the duplicate was issued without such proof as the law required. Mason v. Russell, 1 Texas, 726; The State v. Delesdenier, 7 Texas, 108; Warren v. Shuman, 5 Texas, 441; Blum v. Looney, 69 Texas, 6; Stoddard v. Chambers, 2 How., 318.

6. As there existed no certificate or right thereto in favor of Benning Wentworth, the falsely alleged owner, at the time duplicate number $\frac{30}{185}$ was issued to him, the Commissioner had no authority to issue it, and it was void, and a junior holder of the land has a right to show this. Holmes v. Anderson, 59 Texas, 483; Gunter v. Meade, 78 Texas, 638; Land Mortgage Co. v. The State, 1 Texas Civ. App., 616; Bacon & Bates v. Russell, 57 Texas, 415; Blum v. Looney, 69 Texas, 1.

7. Long before Seibert had learned of the issuance of duplicate number $\frac{30}{185}$ or its location, and therefore before he had ratified the act of the parties obtaining it, the State, through her lawful agent, learning that the parties who obtained the duplicate were not the owners of the certificate or the agents of the owner, disaffirmed the act, and endorsed the instruments on file as a fraud and forgery. The land being then public domain, was again appropriated by a valid alternate certificate, and the school section sold to two of these defendants.

STEPHENS, ASSOCIATE JUSTICE.—There was error in the court's conclusion that the location in Kimble County under duplicate certificate number 108 had been made prior to the location in controversy under duplicate certificate number $\frac{30}{185}$. The testimony of the Land Commissioner was explicit, that duplicate number 108 had been located in Kimble County, May 19, 1877, which was long after this duplicate had been lost and substituted by duplicate number $\frac{29}{10}$, issued October 23, 1867; and that the location in Wilbarger County, from which this suit arose, had been made September 10, 1874, under duplicate $\frac{30}{185}$, issued upon proof of loss of duplicate $\frac{29}{10}$ as a substitute therefor, March 7, 1873.

The recitals in the deed made in Indiana, October 25, 1858, by David Seibert and wife, to appellant, to the effect that they thereby conveyed all their right, title, and interest in the lands lying in the State of Texas that had been located under the headright land certificate of William Wentworth for one-third of a league of land, issued by the Board of Land Commissioners of Matagorda County, May 3, 1841, substituted September 25, 1857, by duplicate certificate number 108, upon proof of the loss of the original; together with the following endorsements on duplicate 108: "Filed April 18, 1859, by J. M. Donathan. Filed January 23, 1862. Filed March 22, A. D. 1876, at 10 o'clock a. m.; C. M. Hobbill, D. C. M. Co. Refiled July 19, 1877. J. J. Groos, Commissioner," were not circumstances sufficient, we think, to overcome the positive testimony of the Land Commissioner.

There was no evidence that appellant caused the location in Kimble County to be made; but on the contrary, the evidence tended to show that he had nothing to do with it, except to protest, through his agent, against the issuance of patent thereon. The corrected field notes of this survey recite that it was made for D. N. Terrill, assignee. The patent was afterwards cancelled by the Land Commissioner, of his own motion, on the ground of the supposed invalidity of the original certificate. Under these circumstances, we think this location should not prejudice appellant's prior location of the land in dispute, which, though made without his personal knowledge, was ratified by him, while the subsequent location was rejected.

There was error also in the conclusion that appellant, plaintiff below, could not recover because he had failed to prove that the land in controversy had been surveyed within twelve months from the date of his entry or application for said land. As this survey was made prior to 1879, the law required no written application to be made. Possession by the surveyor of the certificate was sufficient. The return of the field notes, with the duplicate certificate, to the General Land Office within twelve months after the survey was made, and prior to the inception of appellees' rights, furnished sufficient evidence of a location prima facie valid, provided the duplicate certificate itself was also valid.

This brings us to the most important question in the case, whether appellant made out a prima facie case of a valid certificate. If he did, the proof relied on to rebut it was not, in our opinion, sufficient to deprive him of a recovery against a subsequent locator. While a prior locator who has not secured a patent to the land must show a valid certificate and survey in order to recover, we understand the rule to be, that, like any other plaintiff, he is only required in the first instance to make out a prima facie case, and not to exclude all possible defects in his title.

It is not contended that the original Wentworth certificate, or either of the duplicates prior to number $\frac{30}{185}$, was invalid when issued; but the contention seems to be, that number $\frac{30}{185}$ was not properly issued in compliance with the statutes providing for the issuance of duplicate certificates; and that if so issued, it was invalid, because that for which it was substituted had been absorbed by prior location.

The ground upon which the court held its issuance to be void for want of compliance with the statute on that subject was, that there was no proof, as required by article 3885, Revised Statutes, that notice had been given of the loss and application for a duplicate. This proof consisted of the certificate of the publisher, accompanying a printed advertisement of the loss, etc., to the effect that the publication had been made for sixty days, on file in the Land Office since about 1872 or 1873, which certificate showed a substantial compliance with the statute, except that it was

not sworn to. The Commissioner seems to have been satisfied of its truth, as manifested by his issuance of the duplicate. The evident purpose of the statute was to furnish evidence for his action; and if in fact the requisite publication was made, as we think should be inferred, in the absence of further showing, the statute was substantially complied with.

While this proceeding to substitute is not free from the suspicion that it was conceived in fraud and consummated through perjury and forgery, by a stranger to the title, we are of opinion that the proof did not go far enough to invalidate it on that ground. The invalidity, then, must depend upon the alleged absorption of the antecedent duplicate as the result of a previous location.

It appears that duplicate number $\frac{29}{10}$ was located in Fannin and Lamar counties, in the year 1869, and the survey forfeited for nonreturn of certificate. It also appears that duplicate number 108 was at one time located in Jack County, and the survey forfeited for nonreturn of the certificate by July 29, 1872. It does not appear at whose instance these locations were made. Appellant had no personal knowledge of them, but from time to time had several agents in the State, he being all the time a nonresident. It further appears that no land has ever been patented, except as shown above, by virtue of the original William Wentworth headright or any of its duplicates. No explanation was made of the file marks on duplicate number 108.

We are of opinion that the surveys forfeited for nonreturn of certificate did not invalidate the certificate itself; that it still had virtue left in it, and is not within the rule which holds a land certificate, when once located and returned to the Land Office, functus officio, unless withdrawn under some express provision of the statute. If during the life of duplicate 108 it was thus tied to a survey of land by being located and returned to the Land Office, and afterwards withdrawn without statutory authority, its career was ended, and no further duplicates could be lawfully issued. Adams v. Railway, 70 Texas, 267; Von Rosenberg v. Culler, 80 Texas, 256.

While appellant's title was by no means free from suggestions of infirmity, we have reached the conclusion that it was prima facie good, and that to overcome it the proof must do more than raise a suspicion of its invalidity.

The judgment will therefore be reversed and the cause remanded for a new trial.

<em>Reversed and remanded.</em>

Delivered October 11, 1893.

Pending a motion for rehearing, the Supreme Court, upon questions certified to it in this cause, held, that the forfeiture of the survey in 1869

did not invalidate the certificate itself; and, in effect, that false and fraudulent representations of ownership and authority in procuring the issuance of the duplicate did not defeat the right of the owner of the certificate to claim, as against a subsequent locator, the land located in 1874 by virtue of such duplicate.　Motion overruled.