## COMPTON v. HATCH et al.

(Court of Civil Appeals of Texas.    March 16, 1911.)

1. PUBLIC LANDS (§ 175*)—CONFLICTING SURVEYS—PRIORITIES.

Where a survey under which plaintiff claimed was the oldest, if it was valid and subsisting at the time the other surveys were made, the superior right was in the plaintiff, notwithstanding that the other surveys were patented first.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 570; Dec. Dig. § 175.*]

2. EVIDENCE (§ 83*)—PUBLIC LANDS (§ 174*)—DUTY OF COMMISSIONER—PRESUMPTION OF PERFORMANCE.

Under Paschal's Dig. arts. 4302 and 4211 et seq., it was the duty of the Commissioner of the General Land Office to satisfy himself that the original certificate was a valid one, before issuing an unlocated balance certificate, and it will be presumed that he discharged this duty; hence, where a survey was made in B. county in 1838, under which land was patented in 1847 and canceled in 1855, because in conflict with older valid claims, and not for any infirmity of the certificate, and another survey, made in B. county in 1847 by virtue of the certificate, was patented during that year, and the Commissioner in 1855, after canceling the patent issued on the survey made in 1838, again recognized the certificate as valid by issuing the unlocated balance certificate, the original certificate was prima facie valid.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. § 83;* Public Lands, Cent. Dig. §§ 552–554; Dec. Dig. § 174.*]

3. PUBLIC LANDS (§ 175*)—LOCATION—SURVEY—CERTIFICATE.

Where field notes showed a survey of public lands for J. C. D. by virtue of a certificate issued by the Commissioner of the General Land Office to J. S., whether J. C. D. was authorized to locate the certificate, as between the parties to a suit involving the certificate, was a question of no importance, as the location made at J. C. D.'s instance, whether he was authorized to make it or not, inured to the benefit of the owner of the certificate, if he thought proper to avail himself of it.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 555–570; Dec. Dig. § 175.*]

4. PUBLIC LANDS (§ 175*)—LOCATION—SURVEY—CERTIFICATE.

Under Paschal's Dig. art. 4573; Act Aug. 30, 1856 (Laws 1856, c. 145), in force at the time a survey was made, holders of the certificates locating public lands were authorized to have them surveyed without first making an application therefor.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 555–570; Dec. Dig. § 175.*]

5. PUBLIC LANDS (§ 175*)—SURVEY—CERTIFICATE—FIELD NOTES.

The statute in force in 1855 (Paschal's Dig. art. 4573) only required that the surveyor keep a book and register entries for an application for surveys in his county, and that the certificate must be in his hands when he made the survey, and remain in his office until he returned the field notes to the General Land Office. Article 1087 required him once in every three months to plat upon the map of his county all surveys made to that date within the three preceding months, and articles 1086 and 4522 declared that his books, maps, etc., should be open at all times for inspection. Held, that it was not necessary to embody the description of a certificate in the field notes of a survey made under it.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 175.*]

6. PUBLIC LANDS (§ 175*)—SURVEY—DESCRIPTION—CERTIFICATE—FIELD NOTES—NOTICE.

Where field notes of a survey of public lands made by virtue of a certificate described it as No. 3918/4019, issued by the Commissioner of the General Land Office April 3, 1855, to J. S. for 12,938,450 square varas, the description was sufficient to notify holders of other certificates that the land had been lawfully appropriated, and such holders are estopped to say that they had no notice thereof.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 555–570; Dec. Dig. § 175.*]

7. PUBLIC LANDS (§ 175*)—LOCATION—SURVEY—CERTIFICATES.

Where field notes contained the words "field notes of a survey of 709,578 sq. vrs. made for J. C. D. by virtue of certificate No. 3918/4019 issued to J. S. for 12,938,450 sq. vrs., also by virtue of same certificate, 8,676,-872 sq. vrs.," it could not refer to any other certificate than the one described in the field notes of the latter survey, and the description in the field notes of 709,578 sq. vrs. was also contained in the description of 8,676,872 sq. vrs.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 175.*]

8. PUBLIC LANDS (§ 175*)—LOCATION—SURVEY—CERTIFICATES—CHANGE—RIGHTS OF CONTESTANTS.

Where changes in field notes as they were originally made were made after the rights of parties contesting the survey had become fixed, such rights could not be affected by the changes.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 175.*]

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Action by R. N. Compton, as administrator of Ridge Paschal, deceased, against Frank W. Hatch and others. From a judgment for plaintiff, for insufficient relief, he appeals. Reversed and remanded.

This was an action of trespass to try title commenced and prosecuted by appellant, as administrator of the estate of Ridge Paschal, deceased, against appellees D. P. Whitley, R. C. Graves, E. A. Dillon, and Frank W. Hatch. The land was described in appellant's petition by its metes and bounds, and as a survey of 8,676,872 square varas made by virtue of U. B. certificate No. 3918/4019, issued to John Sutherland, assignee of Iginio Tejada, by the Commissioner of the General Land Office April 3, 1855. Appellee Whitley

did not answer. Appellee Graves answered, disclaiming any interest in the land. Appellee Dillon answered, setting up title in himself to 115½ acres of the land as surveyed and patented by virtue of a certificate issued to the M. E. P. & P. R. R. Co., and disclaimed as to the remainder of the tract sued for. As to the 115½ acres, he interposed pleas of not guilty and stale demand. Appellee Hatch answered, setting up title in himself to 640 acres of the remainder of the tract claimed by appellant as surveyed and patented by virtue of a certificate issued to the H. & G. N. R. R. Co., and disclaimed as to all the land sued for, except said 640 acres. As to the 640 acres claimed by him, he also interposed pleas of not guilty and stale demand. In his answer Hatch further alleged that he had acquired the 640 acres he claimed from J. M. and J. J. Early in consideration of his conveyance to them of another tract of land, and he prayed for relief as against them, in the event of a recovery thereof by appellant. The Earlys filed an answer, adopting as their own the answer filed by Hatch, in so far as it was a reply to appellant's petition, and alleging certain matters it is unnecessary to state, in reply to the recovery sought against them by Hatch. The trial was by the court without a jury, and resulted in a judgment in favor of appellant against Graves and Whitley for the land described in the petition, and in favor of appellant against Hatch and Dillon for all the land so described, except the 640 and 115½ acres they respectively claimed. As to said 640 acres the judgment was in favor of Hatch, and as to said 115½ acres it was in favor of Dillon. As to the relief sought against them by Hatch, the judgment was in favor of the Earlys.

The court's findings of facts and conclusions of law, as reduced to writing and filed by him, were as follows:

"(1) I find that the plaintiff, R. N. Compton, is the administrator of the estate of Ridge Paschal, deceased, and that said administration is open and pending in the county court of Freestone county, Tex., and that the land described in plaintiff's petition was willed to Ridge Paschal by his father, Geo. W. Paschal, deceased.

"(2) I find that on the 11th day of April, 1838, the board of land commissioners of Bexar county issued a certificate, No. 486 class 1, to John Sutherland, assignee of Iginio Tejada, for one league and one labor of land, and that the same was transferred by Iginio Tejada to John Sutherland, March 3, 1838, and that John Sutherland transferred said certificate to James Paul, May 2, 1838, and that James Paul conveyed the land in Bexar county, upon which said certificate had been located to Geo. W. Paschal, February 20, 1852.

"(3) I find that a patent from the state of Texas to John Sutherland, assignee of Iginio

Tejada, for 12.931450 labors of land in Bexar county, Tex., was located and surveyed by virtue of said certificate July 3, 1847, field notes dated November 7, 1838.

"(4) I find that the patent to said land was canceled by the district court of Bexar county, Tex., March 22, 1855, and that on the 3d day of April, 1855, the Commissioner of the General Land Office issued a U. B. certificate No. 3918/4019 to John Sutherland, assignee of Iginio Tejada, for 12.938450 labors of land, and that the same was filed on three tracts of land in Red River county, Tex., one of them being the land described in plaintiff's petition, and date of file being February 22, 1873, and the survey was made March 19, 1874. I find on the margin of the file records in the surveyor's office of Red River county, Tex., the following entry: 'Renewed Feb. 16th, 1874. T. H. Young, Co. Surveyor.'

"(5) I find that the file and location of said certificate was made at the instance of one John C. Duvall, whose right and authority was not disclosed; and I also find that the said application did not describe the land involved in this suit, nor the certificate, and that neither the original field notes in the surveyor's office of Red River county, nor the field notes as returned to the General Land Office, in so far as they related to the land involved in this suit, showed No. 3918/4019, Iginio Tejada, nor the letters 'U. B.,' and did not describe the certificate by virtue of which the file and survey was made, and that said land was not surveyed for more than 12 months after said file was made, and that the corrections on the records in the surveyor's office of Red River county, Tex., and in the General Land Office, by inserting the letters 'U. B.' and the words and figures 'No. 3918/4019, Iginio Tejada,' on the ——— day of ———, 1906, long after the patent under which the defendant F. W. Hatch claims was issued, and long after the patent under which the defendant E. A. Dillon claims had been issued.

"(6) I find that the certificate issued to John Sutherland, assignee of Iginio Tejada, was never passed on by the board appointed to detect fraudulent land certificates, and that they never made any order as to its validity.

"(7) I find that the patent to the land described in plaintiff's petition was issued by the state of Texas to John Sutherland, assignee of Iginio Tejada, on January 31, 1907.

"(8) I find that no one claiming under the certificate issued to John Sutherland, assignee, has ever paid any taxes on said land, nor rendered it for taxation, up to the institution of this suit.

"(9) I find that the defendant R. C. Graves has filed a disclaimer herein; that the defendant D. P. Whitley was duly cited, but made default; that the defendant F. W. Hatch claims title to 640 acres of land pat-

ented to Robert Wilson, assignee of the H. & G. N. R. R. Co., which is covered by the field notes in plaintiff's petition, and disclaims as to the balance of the land described in said petition; and that the defendant E. A. Dillon claims title to 115½ acres of the land covered by the field notes in plaintiff's petition, patented to S. H. Morgan, assignee of the M. E. P. & P. R. R. Co., and disclaims as to the balance of said survey.

"(10) I find that on the 30th day of May, 1878, the state of Texas patented to Robert Wilson, assignee of the H. & G. N. R. R. Co., the 640 acres of land described in the answer of the defendant F. W. Hatch, and that the said F. W. Hatch has a regular chain of title to said land under said patent, and that he and those whose title he has paid all taxes on said 640 acres of land since the same was patented.

"(11) I find that the land described in the answer of the defendant E. A. Dillon was patented to S. H. Morgan, assignee of the M. E. P. & P. R. R. Co., November 20, 1880, and that he claims title under a regular chain of title under said patent down to himself, and that he and those under whom he claims have paid all taxes on said land since said patent was issued."

"I conclude as matters of law the following:

"1. I conclude that plaintiff should recover of the defendant R. C. Graves the land he has disclaimed, and should recover of and from the defendant D. P. Whitley all the right, title, and interest that he may have in and to the land described in plaintiff's petition, and should recover of the defendants F. W. Hatch and E. A. Dillon that portion of said land to which they have disclaimed in their respective answers.

"2. I conclude that the file and survey does not properly describe either the certificate or the land upon which it was filed, and was not notice to subsequent locators on same land, or any part thereof.

"3. I conclude as a matter of law that the survey should have been made within 12 months after the file was made, and that the words written in the margin of the surveyor's File Record, 'Renewed February 16th, 1874,' were made without any authority of law and do not constitute a new application, and are not a relocation as provided by law.

"4. I conclude that a description of the certificate in the file and survey is essential to a valid location and survey, and that no proper description was given, and the insertion of the 'U. B.' and the words and figures 'No. 3918/4019, Iginio Tejada,' was a material alteration, and without which the description of the certificate under and by virtue of which the location and survey were made could not be identified, and that the same was inserted without any authority of law after the rights of the defendant F. W. Hatch had intervened, and nearly 30 years after the lands claimed by them had been patented by the state of Texas.

"5. I conclude that the description given in the application of John C. Duvall does not sufficiently describe any land to form the basis of a location and survey, and such application should disclose the interest of Duvall and show for whom he was acting.

"6. I conclude that the certificate issued to John Sutherland, assignee of Iginio Tejada, should have been approved by the board appointed to detect fraudulent land certificates, and that this should have been shown.

"7. I therefore conclude that plaintiff should take nothing as against the defendant F. W. Hatch as to the land claimed in his answer, and that he take nothing against the defendant E. A. Dillon as to the land claimed in his answer, and that the said F. W. Hatch and E. A. Dillon should each recover of and from the estate of the said Ridge Paschal in the hands of R. N. Compton, administrator, their costs, and judgment is accordingly so rendered."

Kennedy & Robbins and Hart, Mahaffey & Thomas, for appellant. Chambers & Black and Burdett & Connor, for appellees.

WILLSON, C. J. (after stating the facts as above). It appears that the 8,676,872 square varas, about 1,536 acres, claimed by appellant's intestate, was surveyed March 19, 1874, and patented January 31, 1907. It further appears that the 640 acres of said 1,536 acres claimed by appellee Hatch was surveyed June 15, 1876, in accordance with an application therefor made May 14, 1875, renewed April 18, 1876; and that same was patented May 30, 1878; and that the 115½ acres thereof claimed by appellee Dillon was surveyed April 30, 1880, without an application in writing having been made therefor, and was patented November 20, 1880. The survey under which appellant claimed being the oldest, if it was valid and subsisting at the times the other surveys were made, the superior right to the land was in appellant as administrator, notwithstanding the fact that the surveys under which appellees Hatch and Dillon claimed were patented first. Hollingsworth v. Holshausen, 25 Tex. 628; Mohler v. Welge, 20 S. W. 850; Wyllie v. Wynne, 26 Tex. 44. Whether said survey was valid or not depended upon whether (1) it was made by virtue of a valid certificate (2) as permitted by law, or not.

It was shown that the survey was made by virtue of a certificate issued by the Commissioner of the General Land Office, April 3, 1855, to John Sutherland, assignee of Iginio Tejada, for 12,938,450 square varas, the unlocated balance of certificate No. 486 for one league and one labor of land, issued April 11, 1838, by the board of land commissioners of Bexar county to said Sutherland, assignee of said Tejada. The trial court found as a fact

that the original certificate, No. 486, "was never passed on by the board appointed to detect fraudulent land certificates," and concluded as a matter of law that the survey therefore was invalid. The finding is challenged as incorrect, because "contrary to all and not supported by any evidence in the record." There is no direct evidence in the record, showing either that the certificate was or that it was not recommended by the board referred to. It was shown, however, that a survey made in Bexar county in 1838, by virtue of the certificate, was patented in 1847, and that, while this patent was canceled in 1855, it was canceled because the survey was in conflict with an older valid claim to the land, and not because of any infirmity of the certificate. It was also shown that another survey made in Bexar county in 1847 by virtue of the certificate was patented during that year. It was also shown that the Commissioner of the General Land Office, after canceling the patent issued on the survey made in Bexar county in 1838, to wit, on April 3, 1855, again recognized the certificate as a valid one by issuing the unlocated balance certificate described above.

It is insisted that presumptions arising from the facts stated prima facie established that the original certificate was a valid one; and, there being no testimony rebutting such presumptions, that the trial court was not at liberty to ignore them. It may be that the proof made that patents had been issued on surveys of other land than that in controversy made by virtue of the original certificate was not competent to prove the validity of that certificate. But we think a presumption in favor of its validity arose from the proof made that the certificate, by virtue of which the land in controversy was surveyed, was issued by the Commissioner of the General Land Office as the unlocated balance of said original certificate. Before issuing this unlocated balance certificate, it was clearly the duty, we think, of the Commissioner of the General Land Office to satisfy himself that the original certificate was a valid one. Pasch. Laws, arts. 4302 and 4211 et seq. The presumption, we think, ought to be indulged that in issuing the unlocated balance certificate he discharged this duty. Shepard v. Avery, 89 Tex. 305, 34 S. W. 440; Deen v. Willis, 21 Tex. 649; Warnell v. Finch, 15 Tex. 166; Kimbro v. Hamilton, 28 Tex. 566; Howard v. Perry, 7 Tex. 266; Bryan v. Shirley, 53 Tex. 440. We therefore are of the opinion that the testimony established prima facie that the original certificate was valid, and, there being no testimony which can be said to have tended to establish the contrary, that the court erred in finding that certificate to be invalid. The presumption being a mere rule of evidence, we see no reason why it should not be held competent to prove the equitable title asserted by appellant. To give it force for such a purpose, it seems to us, is not to conflict with the rule invoked by appellees Hatch and Dillon, which required appellant, claiming as he did against the legal title in them, to prove that he had a superior equitable right to the land.

Three surveys, one of 709,578 square varas, another of 3,552,000 square varas, and the other of 8,676,872 square varas, aggregating 12,938,450 square varas, the quantity called for in the certificate, were made in Red River county by virtue of the Tejada certificate No. 3918/4019. All of them were made on an application therefor, dated February 22, 1873. On the margin of the page of the surveyor's record book where the application was noted was this indorsement: "Renewed Feb. 16, 1874." The surveys of 709,578 square varas and 3,552,000 square varas were made February 27, 1874. The survey of 8,676,872 square varas, which includes the land in controversy, was made March 19, 1874. Field notes of the three surveys were recorded in the surveyor's office on said March 19, 1874, and, with said certificate No. 3918/4019, were returned to and filed in the General Land Office on March 28, 1874. Instead of making, certifying, and recording separately field notes of each of the surveys, it seems the surveyor certified and recorded them as if they had been one set of field notes. As recorded in the surveyor's office, omitting portions thereof not material to the questions made, the field notes were as follows: "John C. Duvall. Survey No. 1321. Field notes of a survey of 709,578 sq. vrs. of land made for John C. Duvall by virtue of certificate No. 3918/4019, issued by the Commissioner of the General Land Office, April 3, 1855, to John Sutherland for 12,938,450 sq. vrs. Said survey is No. 1321, in Red River county, on the waters of Pine creek, a tributary of Red river, about 16 miles N. W. from Clarksville, beginning, etc. * * * Also 3,552,000 sqs. vrs. of land, about 12 miles north of Clarksville, situated on the waters of Little Pine creek, a tributary of Red river, beginning, etc. * * * Also, by virtue of same certificate, 8,676,872 sq. vrs. of land, situated on the waters of Cuthand creek, a tributary of the Sulphur fork of Red river, about 12 miles S. E. from the town of Clarksville, beginning," etc. The application for the surveys as noted in the surveyor's record book described the certificate as "the unlocated balance certificate of the headright of John Sutherland for 12,938,450 square varas, No. 3918/4019, issued by the Commissioner of the General Land Office, April 3, 1855." After designating other land to be first surveyed as a satisfaction of the certificate in part, the application contained this further designation: "Also, by virtue of balance of said certificate, the following described land is herewith entered, to wit: A void survey in the name of B. Wilkins, and vacant lands adjoining.

Beginning at the northwest corner of said Wilkins and running so as to include the same and a sufficient amount of the vacant lands adjoining to exhaust the balance of the certificate." A part of the land just described as designated in the application for surveys by virtue of the certificate is the land in controversy. Deaver, the county surveyor of Red River county, testified, and he was not contradicted by any other testimony, as follows: "I can tell where the B. Wilkins void survey was located. It was afterwards covered by Lovell Caufman survey, and the Lovell Caufman proved to be void. The field notes of U. B. certificate No. 3918/4019 issued to Iginio Tejada for 8,676,872 square varas of land embraces all of the Lovell Caufman survey. The Lovell Caufman was originally part of the Wilkins survey, and the Lovell Caufman and Elizabeth Sharp constitute the void survey of B. Wilkins. * * * The Tejada land does not include the Elizabeth Sharp the way it was surveyed."

The trial court found as facts: (1) That it had not been shown that Duvall had authority to locate the certificate; (2) that his application for the survey made did not describe the land in controversy; (3) that the survey of the land in controversy was not made within 12 months from the date of the application therefor; and (4) that neither the application for the survey nor the field notes thereof described the Tejada certificate. On these findings the court concluded as a matter of law that the survey was invalid. The findings and conclusion are attacked as erroneous.

Whether Duvall was authorized to locate the certificate or not, as between the parties to the suit, we think was a question of no importance. The location made at Duvall's instance, whether he was authorized to make it or not, inured to the benefit of the owner of the certificate, if he thought proper to avail himself of it. Wyllie v. Wynne, 26 Tex. 44. Whether the application for the survey described the land in controversy or not, whether an effective renewal of that application resulted from the indorsement on the surveyor's record thereof or not, and therefore whether the survey should be said to have been made within 12 months from the date of the application or not, we think also were immaterial questions as between the parties to the suit. By the express terms of the act of August 30, 1856 (Laws 1856, c. 145), in force at the time the survey was made, holders of such certificates were authorized to have them surveyed without first making an application therefor. Pasch. Laws, art. 4573; Seibert v. Richardson, 5 Tex. Civ. App. 504, 23 S. W. 900. In the case just cited the court said: "There was error also in the conclusion that appellant, plaintiff below, could not recover because he had failed to prove that the land in controversy had been surveyed within 12 months from the date of his entry or application for said land. As this survey was made prior to 1879, the law required no written application to be made. Possession by the surveyor of the certificate was sufficient. The return of the field notes with the duplicate certificate to the General Land Office within 12 months after the survey was made, and prior to the inception of appellee's rights, furnished sufficient evidence of a location prima facie valid, provided the duplicate certificate itself was also valid."

We have not been referred to and have not found a statute in force at the time the survey in question was made, requiring the certificate to be described in the field notes of a survey made by virtue of it. Such a statute is now and has been in force since the Revised Statutes took effect in 1879 (Sayles' Ann. Civ. St. 1897, art. 4144; and see report of the commissioners appointed in 1876 to revise the statutes of the state); but, of course, it is not entitled to be considered in determining a question as to what field notes made before it took effect should contain. If, however, the sufficiency or insufficiency of the description given in the field notes should be tested by that statute, we are not prepared to say that the description was not sufficient. That statute requires field notes to give a description of the certificate by "number, date, when and where issued, name of original grantee and quantity." In the field notes of the first of the three surveys made by virtue of the Tejada certificate it was described as "No. 3918/4019 issued by the Commissioner of the General Land Office, April 3, 1855, to John Sutherland for 12,938,450 square varas." It could not be pretended, had the survey been made after the statute referred to took effect, that the description in the field notes was not a full compliance with all of its requirements, except the one requiring the name of the original grantee of the certificate to be stated. And it is not clear that the description was not in compliance, also, with that requirement. Neither the original nor the unlocated balance certificate was issued to Tejada. They were issued in his right, but to Sutherland as his assignee. It seems to us that the plain meaning of the words would have to be ignored to say that Tejada, and not Sutherland, was the "original grantee" of the certificate. But whether Tejada or Sutherland should be held to be the original grantee, with reference to the description to be given in field notes made under the law now in force, and whether, if Tejada should be held to be the original grantee, the survey, had it been made under that law, should be treated as invalid because the field notes described Sutherland as the original grantee of the certificate, it is clear, we think, the survey having been made at a time when such a description was not required by law to be

embodied in the field notes, that it should not be held that the failure to so describe same therein invalidated the survey. Had the field notes failed to give any description whatever of the certificate, it is not clear that the survey for that reason should be held to be void, even in favor of parties who subsequently located other certificates on the land. The law required the surveyor to keep a book and in same to register entries or applications for surveys of land in his county. Pasch. Laws, art. 4573. It further required the certificate authorizing it to be in his hands at the time he made a survey, and to remain in his office until he returned it with field notes of the survey to the General Land Office. Pasch. Laws, art. 4573. It further required the surveyor once in every three months to plat upon the map of his county all surveys made to that date, within the three preceding months. Pasch. Laws, art. 1087. It further declared that his books, maps, etc., should be open at all times for inspection. Pasch. Laws, arts. 1086 and 4522. Means of knowing whether particular land had been appropriated by other certificates were thus furnished to a person desiring to locate a certificate upon it. If such person failed to resort to the means so furnished to him to ascertain whether such land had been appropriated by another person or not, he should not be held to have acquired rights as against the other party, who, in locating his certificate, had not in any respect failed to comply with the requirements of the law. Moreover, the field notes, with the certificate, were returned to and filed in the General Land Office, where they were subject to inspection by any one who might choose to inspect them, on March 28, 1874, long before any rights are claimed to have been acquired by virtue of the location of the certificates under which appellees Hatch and Dillon claim. An examination in said land office would have disclosed to the owners of the adverse claims that the land had already been appropriated by a survey made by virtue of the Tejada certificate.

But we are of the opinion, if it was necessary that the field notes of the 8,676,872 square varas should describe the certificate, that the description they contained was sufficient to notify holders of other certificates that the land had been lawfully appropriated. They were advised by that description that the land had been surveyed by virtue of a certificate numbered 3918/4019 issued to John Sutherland by the Commissioner of the General Land Office, April 3, 1855. The material thing for them to know was that the land had already been lawfully appropriated. Having ascertained that much, they should not be heard to say that the appropriation thereof was invalid, because they had no notice that the certificate by virtue of which it had been appropriated was issued to Sutherland as an assignee, instead of to him in his own right.

The contention is made, however, that the description of the certificate just set out above was not given in the field notes of the 8,676,872 square varas survey, but was contained in the field notes of the 709,578 square varas. This is true; but it is apparent, we think, that the language in the field notes of the former survey, to wit, "also by virtue of same certificate," cannot be held to refer to any other certificate than the one described in the field notes of the latter survey. We therefore are of the opinion that there is no merit in the contention.

In what has been said we have not referred to testimony in the record nor to findings of the court, with reference to additions to the description of the certificate as given in the field notes made by the surveyor in compliance with instructions given him by the Commissioner of the General Land Office, but have considered the field notes as they were originally made. The changes referred to were made after the rights of appellees Hatch and Dillon had become fixed, and we think their rights could not be affected by the changes made.

On another trial, if the testimony is not materially different, the judgment should be in appellant's favor against appellees Dillon and Hatch, as well as against appellees Graves and Whitley, for all the land described in the petition.

The judgment is reversed, and the cause is remanded for a new trial.