MAGEE et al. v. PAUL et al.

(Court of Civil Appeals of Texas. Amarillo. March 8, 1913. On Rehearing, May 3, 1913. On Motion for Rehearing, May 10, 1913.)

1. EVIDENCE (§ 318*)—HEARSAY EVIDENCE—EX PARTE AFFIDAVITS.

Ex parte affidavits on file in the Land Office, made to procure the issuance of a duplicate land certificate by witnesses who are living and who gave their depositions, are inadmissible as hearsay to prove the facts recited therein.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1193–1200; Dec. Dig. § 318.*]

2. EVIDENCE (§ 342*)—CERTIFIED COPIES OF PUBLIC RECORDS — STATUTES — CONSTRUCTION.

Sayles' Ann. Civ. St. 1897, arts. 2306, 2308, declaring that certified copies of records of public officers and courts shall be admitted as evidence where the records would be admissible, and providing that officers shall furnish to persons applying therefor certified copies of records, and the same shall be admissible in evidence in all cases in which the originals would be evidence, do not extend the rules of evidence and do not make certified copies of ex parte affidavits on file in the Land Office admissible to prove the facts therein recited.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1302–1314; Dec. Dig. § 342.*]

3. EVIDENCE (§ 372*) — ADMISSIBILITY — ANCIENT INSTRUMENTS.

Ex parte affidavits on file in the Land Office are not admissible in evidence to prove the facts therein recited on the ground that the affidavits are ancient instruments, though they have been on file for more than 30 years.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372;* Public Lands, Cent. Dig. § 622.]

4. DEPOSITIONS (§§ 101, 104*)—EVIDENCE—ADMISSIBILITY.

Where a deposition is offered in evidence, it is evidence of the party offering it, though taken at the instance of the adverse party, but the adverse party is not estopped from objecting to answers to interrogatories propounded by him.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 237–241, 300, 301; Dec. Dig. §§ 101, 104.*]

5. EVIDENCE (§ 471*)—STATEMENT OF OPINION—LEGAL CONCLUSION.

A statement of a witness that he owned an original land certificate and became the owner thereof in due course of business as a dealer in land certificates for value, and that he sold the certificate to a third person in due course of trade for value received at the time of the delivery of the certificate, is objectionable as. the opinion and legal conclusion of the witness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471;* Witnesses, Cent. Dig. §§ 833–836.]

6. PUBLIC LANDS (§ 174*)—LAND CERTIFICATES—POSSESSION—OWNERSHIP.

The mere possession of an unlocated original land certificate, which is mere evidence of the right to appropriate a specified quantity of land from the public domain, is not evidence of title in the possessor.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 552–554; Dec. Dig. § 174.*]

7. DEEDS (§ 83*) — RECORD — INSTRUMENTS ENTITLED TO RECORD — UNLOCATED LAND CERTIFICATES.

An unlocated land certificate is personal property, and a transfer thereof is not entitled to record under Rev. St. 1879, art. 4331.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 218–221; Dec. Dig. § 83.*]

8. EVIDENCE (§ 372*)—"ANCIENT INSTRUMENTS"—ADMISSIBILITY.

A bill of sale of an unlocated duplicate land certificate, which has existed for more than 30 years, and which has been recorded for more than 25 years, is properly admitted in evidence as an ancient instrument.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372.*

For other definitions, see Words and Phrases, vol. 1, p. 383.]

9. EVIDENCE (§ 340*)—RECORDS—ADMISSIBILITY.

In trespass to try title, a certified copy of a sale and probate proceedings in the settlement of the estate of a decedent under whom a party claims is properly received in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1294–1301; Dec. Dig. § 340.*]

10. CORPORATIONS (§ 443*)—DEEDS—EXECUTION—PRESUMPTIONS.

A deed executed by a corporation, attested by its seal, carries with it prima facie evidence of antecedent authority for its execution, though it does not recite such authority on the part of its president and secretary, duly executing and acknowledging the deed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1778, 1783; Dec. Dig. § 443.*]

On Rehearing.

11. APPEAL AND ERROR (§ 748*)—RULES OF COURT—DISCRETION OF COURT ON APPEAL.

Court of Civil Appeals Rule 25 (142 S. W. xii), requiring assignments of error to refer to that part of the motion for new trial in which the error is complained of, is not mandatory, and the question whether assignments disregarding the rule will be considered on appeal is within the discretion of the Court of Civil Appeals, exercised with a view of promoting the ends of justice.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3058–3064; Dec. Dig. § 748.*]

12. TRIAL (§ 85*)—EVIDENCE—OBJECTIONS.

Where evidence is offered as a whole, while a part of it is incompetent and objected to on the ground of incompetency of such part, and no offer is made to introduce the relevant part only, it is not error to exclude the evidence in its entirety.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 222, 223–225; Dec. Dig. § 85.*]

13. PUBLIC LANDS (§ 178*)—LAND CERTIFICATES—TRANSFERS—EVIDENCE.

The transfer of a land certificate from the original grantee before its location may be shown by circumstances; but, where the original grantee is dead, a transfer may not be shown by subsequent dealings of the alleged transferee, who is alive.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

14. EVIDENCE (§ 342*)—EX PARTE AFFIDAVITS —HEARSAY EVIDENCE.

Certified copies of affidavits on file in the Land Office, made to procure the issuance of a duplicate land certificate, which, under the law in existence at the time, could be issued direct to the person claiming the original instead of to the grantee therein alone, are admissible to identify the duplicate and original and the duplicate of the one by virtue of which land was located.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1302–1314; Dec. Dig. § 342.*]

15. DEEDS (§ 83*) — RECORD — TRANSFERS OF CHATTEL REAL.

A bill of sale transferring a duplicate land certificate is properly recorded as a chattel real, where the land had been located and the field notes returned to the Land Office at the time of registration, for at that time the duplicate was a chattel real, though at the time of the execution of the bill of sale there had been no location under the certificate.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 218–221; Dec. Dig. § 83.*]

Hendricks, J., dissenting in part.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Trespass to try title by J. C. Paul and others against J. B. Magee and others. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

W. F. Schenck, of Lubbock, and N. Frank Faulk, of Athens, and Wm. J. Berne, of Ft. Worth, for appellants. W. H. Bledsoe, ' of Lubbock, and Madden, Trulove & Kimbrough, of Amarillo, for appellees.

HALL, J. This suit was brought by appellee Paul, in trespass to try title, to recover a section of land in Lubbock county. There was a trial before the court, without a jury, resulting in a judgment for plaintiff for the entire section. Appellee Paul, plaintiff in the court below, claims the land under the following evidence of title: (1) An original land certificate, No. 16, issued to John H. Gibson and claimed to have been transferred by Gibson to one Parry; (2) an alleged transfer of said original certificate by Parry to one Albert; (3) the alleged issuance and delivery to Albert by the Land Commissioner of duplicate certificate 16; (4) an alleged transfer of said duplicate certificate by Albert to one Daugherty; (5) deed from Daugherty to one Ames; (6) certified copy of alleged will of Ames, conveying said land to the Essex Institute and probate of said will; (7) deed from the Essex Institute conveying said land to one Brookhouse; (8) deed from Brookhouse to appellee Paul. It appears that the land in controversy was located by virtue of original certificate No. 16, which is claimed to have been lost, and a duplicate certificate, No. 35/52, John H. Gibson, grantee, was issued July 5, 1878. It appears that a survey was made by virtue of said certificate on May 23, 1879. The patent was issued May 5, 1882, to "John H. Gibson, his heirs or assigns," reciting that the land was surveyed by virtue of the above-named duplicate certificate. Loss of the original certificate, No. 16, was attempted to be proven by certified copy from the General Land Office by ex parte affidavits of Stephen Albert, who it is claimed was the owner of the original certificate at the time of its loss, and of J. L. A. Thomas, who was in charge of the express car when it is claimed the car was robbed and the certificate stolen. In connection with these, the certified copy from the Land Office of an ex parte affidavit made by W. E. Parry was also offered, for the purpose of showing that Stephen Albert was the owner of the original certificate and that a transfer thereof was attached at the time affiant sold and delivered the same to Albert. A certified copy of the notice, as published in a Tarrant county paper, under the provisions of the law, reciting the loss of the certificate, and a certified copy of an affidavit made by the publisher of said paper, were also admitted. All of the above affidavits and documents were archives of the General Land Office at Austin, as shown by the certificate of the Commissioner of the General Land Office, thereto attached to the copies. W. E. Parry, one of the affiants, testified by deposition that he owned original certificate No. 16; that he acquired the same in due course of trade, and, when he bought it, it was indorsed in blank; that he sold the same to Stephen Albert, in 1877; that Albert paid him value therefor; and that he delivered the original certificate to Albert with the transfer thereto attached. Appellee Paul testified that he and his coplaintiff, Rogers, bought the land in controversy in 1905; that at the time he purchased the same the original patent to said land was delivered to him by his grantor; that he had an abstract of title to same, passed upon by his attorneys; that he then believed they would give him a perfect title to the land; and that he did not know that any one else was asserting an adverse title until a day or two before the filing of this suit; that, under his claim of title, he had been paying taxes ever since the date of his purchase. B. C. Gibson, one of the appellants, and a son of John H. Gibson, testified by deposition that he knew nothing of the land until the matter was called to his attention by his attorneys.

The first five assignments of error assail the action of the court in permitting the introduction of the ex parte. affidavit of Parry, in which Parry swears that when he "sold and delivered to Edward White and Stephen Albert of New Albany, Ind., the following Texas land scrip, numbered as follows, Nos. 16, 941, 1,542, 258, 83, 84, 85, 86, and 88, making nine certificates of land scrip, that the transfers were each attached to each piece of land scrip for 640 acres each and said transfers were properly made and acknowledged, and the said W. E. Parry further deposes and

says that not having any memoranda to refresh his memory, as to the exact number, yet to the best of his recollection, knowledge, and belief the numbers above given are correct." This was signed and sworn to before a notary of Dallas county, on the 3d day of July, 1878. The admission of this certified copy of affidavit as evidence was objected to by appellants, upon the ground that it was secondary and hearsay evidence of the alleged facts set out therein; that the certified copy was not admissible in evidence under the statute, which admits in evidence archives of the General Land Office, because the original affidavit, if offered in evidence, would be secondary evidence of the alleged facts, set out therein.

[1] The general rule is that ex parte affidavits, when offered in evidence, are inadmissible and subject to the objections urged by appellant. In Elliott on Evidence, § 506, it is said that this character of testimony is held to be hearsay, and, because of a want of opportunity to cross-examine the affiant, has usually been excluded. In Houston v. Blythe, 60 Tex. 511, our Supreme Court uses this language: "The objection contained in the seventh bill of exceptions to the introduction in evidence of the affidavit of Amory, attached to the testimony, made before Judge Chas. S. Taylor, was well taken. Amory, if alive, could have been produced and examined as the other witnesses in the case were, but his affidavit in question was ex parte, and was not calculated to shed any proper light on the issue, but might be very likely to prejudice, in the eyes of the jury, the rights of the plaintiffs in error." In this connection, the record shows that the witness Parry was alive when this case was being prepared for trial and that both sides took his deposition. In Halliday v. Lambright, 29 Tex. Civ. App. 230, 68 S. W. 715, Neill, Justice, said: "Nor did the court err in refusing to give at appellant's request a special instruction to the effect that, in deciding as to whether or not the mother of W. P. Dubose had a sister as claimed by plaintiffs, the jury could take into consideration the affidavit of W. H. Mell, to the effect that he was the nearest blood relative and heir of Mary Ann Mell, the mother of W. P. Dubose, and given said affidavit such weight as they, under all the circumstances, considered it entitled to. We can conceive no rule of evidence which would authorize the jury to consider the ex parte affidavit, with which plaintiffs were in no way connected, of a third party, as evidence against them for any purpose."

[2] Appellee insists, however, that the affidavit, although ex parte, and while it may be secondary and hearsay, is admissible as an archive of the Land Office and as an ancient instrument. If such testimony could be admitted at all, it must be by force of the statutes making certified copies from the Land Office of the archives of said office admissible. Article 2306, Sayles' Civil Statutes, is: "Copies of the records of all public officers and courts of this state, certified to under the hand and seal (if there be one) of the lawful possessor of such records, shall be admitted as evidence in all cases where the records themselves would be admissible." Article 2308, Id., provides that the Secretary of State, Attorney General, Commissioner of the General Land Office, etc., shall furnish any person, who may apply for the same, with a copy of any paper, document, or record in their respective offices, certifying to any fact or facts contained in the papers, documents, or record of their offices, to any person applying for the same; and the article further provides that the same shall be received in evidence in all cases in which the originals would be evidence.

These articles of the statute have been construed by our Supreme Court in several cases. In Gaither v. Hamrick, 69 Tex. 97, 6 S. W. 621, it is said: "But said articles provide that the facts certified by the Commissioner shall be in evidence in all cases in which the originals would be; thus evidencing no intention to extend the rules of evidence, so as to make evidence admissible that was before inadmissible under the rules of common law. The statute providing the means of authenticating copies of documents in all cases, when it was not for any reason proper or convenient to take the original out of the office, and also for authenticating copies of any indorsement in any book or file upon a paper, or any like fact, pertaining to a document or record in such office."

In Holmes v. Anderson, 59 Tex. 482, the court uses this language: "In view of another trial, it is proper to say that a certified copy of a land certificate, made by the Commissioner of the General Land Office, the original being on file in his office, as a link in the chain of title to a survey of land which has been properly returned to that office, is admissible, and is subject only to such objections as could be made to the original were it produced."

In Lott et al. v. King, 79 Tex. 292, 15 S. W. 231, our Supreme Court held that the affidavit of Barnes Parker, filed for the purpose of procuring the issuance of a duplicate certificate by virtue of which the land was patented, was not admissible, upon the ground that it was not relevant to any issue in the case.

The latest authority upon this question in this state is found in 145 S. W. 709, in the case of Crosby v. Ardoin, in which Justice Higgins, in an able opinion, discusses the admissibility of a similar affidavit. There was a dissenting opinion filed in the case, and the Supreme Court refused a writ of error, the effect of which is to make the case conclusive authority of the question now under consideration. It appears from the opinion that the trial court excluded certi-

fied copies from the Land Office of the affidavit made by William C. Stanley, dated October 14, 1851, said affidavit reciting that the original certificate had been lost; that he had never sold, alienated, or transferred the same in any manner; and that he was the owner thereof. The trial court also excluded a copy of the advertisement of such loss in the newspaper and the certificate of the publisher of the newspaper, upon which affidavit, advertisement, and certificate the duplicate certificate was presumably issued. While the opinion holds that the assignments submitting the question were insufficient, this language is used: "In passing, however, we will say, if the affidavit, advertisement, and publisher's certificate were offered in support of the plea of non est factum of the Stanley-Huling deed, the court properly excluded the same. The advertisement and certificate in no wise tended to prove the plea of forgery. The affidavit of Stanley, however, that he was still the owner of the original certificate and had never sold, alienated, or transferred the same, would impeach the validity of the Huling transfer, if properly admissible. As a general rule, ex parte affidavits are not admissible in evidence. The law governing the issuance of duplicate certificates required the owner to make this affidavit as a prerequisite to the issuance of the duplicate, and, if the validity and regularity of issuance of the duplicate certificate was an issue, then the affidavit, advertisement, and certificate would properly be admissible as evidence to show that the statutory prerequisites had been complied with. The affidavit, however, would not be evidence against a third party of the truth of the facts therein stated. It is true the land claimed by appellees in this suit was patented by virtue of the duplicate certificate, but an ex parte affidavit made by Stanley would not be admissible in evidence to prove forgery of a deed purporting to have been theretofore executed by him. The question is analogous to certain evidence required in controversies over the title to free school land. The law regulating the sale of free school land requires the purchasers, within a certain time after the land is awarded to him, to file an affidavit in the Land Office stating that he has in fact settled upon the land * * * and made certain improvements thereon. In an action by such purchaser to establish his title to the land, these affidavits are admissible in evidence for the purpose of showing that the statutory provision requiring their filing has been complied with, but they are not to be received as evidence of the truth of the statements therein contained. So in the instant case, if it were material to show the fact that the affidavit was filed and the necessary publication made, the affidavit and certificate and advertisement would be admissible to show that the statutory requirements had

been complied with, but not as evidence of the truth of the statements contained in the affidavit that Stanley was then the owner of the original certificate and that he had not sold or transferred the same."

[3] Appellee further contends that the certified copy is admissible under the rule admitting ancient instruments. This contention must be denied upon the authority of Mackey v. Armstrong, 84 Tex. 159, 19 S. W. 463.

[4, 5] The trial court concluded from the recitals in this affidavit that Parry had sold certificate No. 16 to Edward White and Stephen Albert, and that to each certificate was attached a transfer of the land scrip, and that such transfers were properly made and acknowledged. In our opinion, the court erred in admitting and considering, over appellant's objections, Parry's affidavit, and, if it is excluded from consideration, this link in appellee's chain of title must fail. Parry's statement in the certificate that he sold and delivered to White and Albert the certificates specified therein carries with it the idea of ownership upon his part, though the recitals in the certificate are not definite upon this point. To further establish the question of ownership, the court, over the objection of appellants, admitted and considered the following cross-interrogatory and the answer thereto, as contained in the deposition of the witness Parry: "Q. Isn't it a fact that you did own said certificate No. 16 or any of the other certificates, and that Stephen Albert got hold of said certificate in some way, and you and others merely were in his office and do not know where said certificate or certificates came from? A. This is not a fact. I own certificate No. 16, having become the owner of same in due course of my business as a dealer in land certificates for value received. I became the owner of the other certificates in a like manner. I sold certificate No. 16 to Stephen Albert, in due course of trade, and received from him the value thereof at the time and delivered same to him at my place of business." This cross-interrogatory was propounded by the appellants, but they did not offer it in evidence. It is held that where a deposition is offered in evidence it is evidence of the party who offered it, though it was taken at the instance of the opposite party; and, although an interrogatory is propounded by a party to a witness, such party is not estopped from objecting to the answer when such answer is offered in evidence by the adverse party. Galveston, etc., Co. v. Young, 148 S. W. 1113; Reed v. Holloway, 127 S. W. 1189; Western, etc., Co. v. Lovely, 29 Tex. Civ. App. 584, 69 S. W. 128; McCutcheon v. Jackson, 40 S. W. 177. The admission and consideration by the trial judge of this interrogatory and the answer thereto is made the basis of appellants' sixth, eighth, and ninth assignments, and the same was objected to by appellants because the statement therein con-

tained of the witness Parry, to the effect that he owned the certificate and had become the owner thereof in due course of business for value, was an opinion and conclusion of the witness, and, in addition thereto, his statement that he sold the certificate to Stephen Albert in due course of trade, and received from Albert the market value thereof at the same time, and delivered the same to him at his place of business, was not responsive to the question, and that it was the conclusion of the witness and not a statement of facts.

In Cullers v. Gray, 57 S. W. 305, it was held that the trial court erred in permitting a witness to testify that "the wood (which had been seized), at the time the levy was made, belonged to T. A. Moody," and held that, in proving title, facts and circumstances must be shown that establish it and that title could not be established by the conclusion of a witness, citing the case of Gilbert v. Odum, 69 Tex. 670, 7 S. W. 510, in which latter case it is said: "There was error in permitting the witness King, in the answer to a question, to state that he did not and never did own any interest in the property in controversy; for the reason that title or the want of title in real estate is a conclusion that the law draws from a given state of facts." This court held, in the case of National State Bank v. Ricketts, 152 S. W. 646, that the testimony of J. F. Whiting, to the effect that two promissory notes sued on by the bank were owned by the appellants since a certain date and at the time they were sent to the Western National Bank, should have been excluded upon the ground that such testimony was but a conclusion of the witness, citing Ballew v. Casey, 9 S. W. 189; Scott v. Witt, 41 S. W. 401. It is our opinion that appellants had the right to object to the admission of this testimony, and that the statement of the witness Parry was simply a legal conclusion. Johnston v. Martin, 81 Tex. 18, 16 S. W. 550. In Rea v. Schow & Bro., 42 Tex. Civ. App. 600, 93 S. W. 706, where the question of the sale of certain cotton was in issue, the court permitted Mrs. Jermstead, to whom the cotton had belonged, to testify that on the 4th and 5th of September she sold the two bales of cotton to appellee at Clifton, Tex., and, in passing upon the admissibility of such testimony, Speer, Justice, said: "This clearly was a statement of her opinion or conclusion as to the legal effect of her transaction with appellees and should have been excluded. It was properly for the jury under the instruction of the court, to determine whether or not she sold the cotton to appellees." From a consideration of the above-quoted authorities, and the cases cited therein, we think the objections of the appellants to this evidence should have been sustained.

The ninth assignment complains of the action of the court in permitting the following question and answer to the witness Parry to be introduced: "Q. It is a fact, is it not, Mr. Parry, that you at one time owned the land scrip No. 16, issued by the state of Texas to John H. Gibson, and that same was the original scrip? A. That is my memory of the case exactly. That it was the land certificate issued to John H. Gibson. In my opinion it was the original scrip, and I believed it to be." What we have heretofore said in discussing the last preceding assignment disposes of the ninth assignment, and it is also sustained.

[6] It is contended that the mere fact of possession of original certificate 16, by Parry, carries with it prima facie evidence of the ownership thereof by him. In Shifflet v. Morelle, 68 Tex. 382, 4 S. W. 843, the court said: "Appellant Shifflet and others also claim, by their thirteenth assignment, that the court erred in refusing to give the following instruction requested by them: 'One having possession of a land certificate before location, claiming to own the same, and dealing with it and treating it as his own, is prima facie the owner thereof.' As a legal proposition, this is not sound. The possession of personal property is ordinarily prima facie evidence of title. The right to appropriate a certain quantity of land from the public domain is personal property; but the certificate is the mere evidence of that right. The mere possession of a muniment of title is not evidence of title in the possessor"—and cites Smith v. Sublett, 28 Tex. 163, which holds that, "if a land certificate has been assigned by the grantee, the presumption is that it belongs to the assignee and not to a third person in whose possession it may be found." If there was any competent evidence in the record that Parry ever had possession of the original certificate No. 16, upon the authority of the cases cited, such fact would not make even a prima facie case of ownership in his favor.

For the purpose of establishing a transfer of the ownership of the original certificate from Parry to Albert, the following certified copy of affidavit of Stephen Albert (omitting the formal parts) was admitted by the court: "That when he delivered to the Adams Express Company, at said city of New Albany, the Texas land scrip, No. 16, the transfer of said scrip to him, said deponent, was attached to said land scrip No. 16, for 640 acres of land; that the said transfer to said deponent was duly made and acknowledged; and that said transfer, together with the said land scrip No. 16, has been lost; and that he, the said Stephen Albert, is the sole and exclusive and absolute owner of the said certificate; and that he has never transferred the same or any interest therein to any person." This was signed and sworn to by Stephen Albert, on the 8th day of July, A. D. 1878, and the Commissioner of the General Land Office certifies that it is a copy of the original on file in his office. The introduction of this was objected to because it was not such an

instrument, a certified copy of which could be admitted in evidence under the statute, providing for certified copies of the archives of the Land Office, and because the original affidavit, if offered, would be hearsay and secondary evidence of the facts set out therein. In this connection, there was also introduced a certified copy from the Land Office of the affidavit of J. L. A. Thomas, which states (omitting the formal parts): "That now and on and before February 22, 1878, he is and was a messenger of the Texas Express Co.; that on the evening of February 22, 1878, about 9:30 o'clock, he was attacked by armed and masked men or robbers, at Allen station, Collin county, Tex., and a number of valuable and money packages taken from him forcibly and under threats; that, among others of which he was then and there robbed, was one package from New Albany, Ind., valued at $1,400, addressed to S. W. Lomax, Ft. Worth, Tex." There was also offered and admitted by the court a certified copy of the certificate of the editor of the Ft. Worth Democrat, stating that the notice attached had been inserted in his paper for 60 days according to law. This published notice was signed by F. W. Cromer, agent of the Texas Express Company, and is as follows: "Notice is hereby given that land certificate No. 16, issued to John H. Gibson (also other certificates stated therein) were stolen from Texas Express Co. at Allen, Texas, on the 22d day of February, 1878, and that if said certificates are not recovered or found within sixty days from date hereof application will be made for duplicates to issue according to law." The objections to all of this testimony should have been sustained. The case of Crosby v. Ardoin, supra, and other cases to the same effect, hereinbefore quoted, are conclusive of this question.

[7] The twentieth assignment of error is based upon the action of the trial court in admitting in evidence a transfer by Stephen Albert to J. S. Daugherty of duplicate certificate No. 16. This transfer is in the ordinary form of a bill of sale and recites the fact that certificate No. 16, issued to John H. Gibson, by the Commissioner of the General Land Office, "and transferred by said John H. Gibson to me, the said Stephen Albert." This instrument was acknowledged in statutory form, and the indorsements and certificate of the clerk of Baylor county show it was recorded the 8th day of June, 1886, in the records kept for Lubbock county. We agree with appellant that the record shows the certificate on the date of this transfer as not having been located. It was therefore personal property. Porter v. Burnett, 60 Tex. 222; Hearne v. Gillett, 62 Tex. 25. The certificate, being personal property, was not entitled to record under article 5004, Paschal's Digest Laws; article 4331, Revised Statutes 1879. It seems to be set-

tled law that an unlocated certificate is not a deed, conveyance, or instrument concerning lands or tenements within the meaning of our registration statute, because it does not pertain to any particular land, it being nothing more than a contract between the state and the owner, whereby the latter can select any unlocated land in the state; but a sale and transfer before location is governed by the rules relating to personal property. Dodge v. Litter, 73 Tex. 322, 11 S. W. 331; Shifflet v. Morelle, 68 Tex. 382, 4 S. W. 843; Simpson v. Chapman, 45 Tex. 566.

[8, 9] In our opinion, the instrument in question could not be introduced as a recorded instrument. Appellant insists that by reason of that fact it was necessary to prove its execution; but it appears that at the time it was offered for evidence the instrument was more than 30 years of age, and was admissible under the rules admitting ancient instruments. However, the recital that the certificate had been transferred by John H. Gibson to the grantor therein, Albert, was secondary evidence and a conclusion of the grantor, and that portion of the transfer should have been excluded. The court did not err in admitting in evidence the certified copy of the sale (and probate proceedings had thereon) of Geo. L. Ames, nor was there an error committed by the court in admitting in evidence the deed from the Essex Institute to Irving H. Brookhouse.

[10] The instrument appears to be formally executed and properly acknowledged, by the proper officers of the corporation, and the certificate of acknowledgment is in proper form. The instrument was attested by the seal of the corporation, and in this condition it carried with it prima facie evidence of antecedent authority for its execution. It was not necessary for the instrument to recite such authority on the part of its president and secretary. Quinlan v. Houston, etc., Ry. Co., 89 Tex. 356, 34 S. W. 738; Catlett v. Starr, 70 Tex. 485, 7 S. W. 844.

Several errors are assigned with reference to the admission of this conveyance; but, except as hereinbefore stated, they are without merit and are overruled.

In the disposition made of the case it will not be necessary for us to consider specifically the remaining assignments, and they are overruled as being without merit.

It was incumbent upon appellees, plaintiffs below, to prove such a title in themselves as would sustain a judgment in their favor; in our opinion, they have failed to do this, and the judgment of the trial court is here reversed and remanded for the appellants.

### On Rehearing.

It is the opinion of the majority that the certified copies of the ex parte affidavits mentioned in the original opinion are admissible, not to prove ownership or an as-

sertion of claim of title, but inasmuch as the duplicate certificate shows to have been issued to Gibson, they are admissible to rebut the presumption that Gibson personally procured the issuance of the duplicate, and that it was issued and delivered to him, and to this extent our original opinion is modified, and the trial court should, upon another trial, by its charge, limit the effect of such testimony to that purpose alone. In all else the motion for rehearing is overruled.

### On Motion for Rehearing.

Appellee has filed an extended motion for rehearing and written argument, insisting that this case should be affirmed. We have carefully reviewed the record in connection with the original opinion and are convinced that the cause has been correctly disposed of.

[11] The first ground urged by appellee is the insufficiency of appellants' assignments of error. It is true that the assignments disregard the last part of rule 25 for Courts of Civil Appeals (142 S. W. xii), requiring assignments of error to "refer to that portion of the motion for a new trial in which the error is complained of." We do not agree with appellee that this is mandatory. We think, like most other rules prescribed by the Supreme Court for the government of this court, it is a matter within the discretion of the Court of Civil Appeals, and that such discretion should be exercised with a view of promoting the ends of justice. We were not required to consider the assignments, but, by reason of the interest involved, we decided to waive this informality in appellants' brief.

The next point contended for is that we erred in sustaining the appellants' first, second, third, fourth, and fifth assignments, relating to the certified copy of the affidavit of Parry, which was admitted in evidence by the trial court, and appellee quotes from Wigmore on Evidence, vol. 1, par. 13, as sustaining his contention. If all of section 13 is read, it must lead to the conclusion that Prof. Wigmore's discussion of the multiple admissibility of evidence sustains us in our holding. We read as follows: "It constantly happens that a fact which is inadmissible for one purpose is admissible for other purposes. While, on the other hand, a fact which is entirely admissible, so far as some rules are concerned, is excluded because it fails to satisfy some other rule. * * * So a letter containing a testimonial statement by a person who ought to have been called to the stand is inadmissible under the hearsay rule, and if it cannot be used the res gestæ doctrine, to which the hearsay rule does not apply, it must remain excluded, even though it had come in under the res gestæ doctrine, it could have satisfied the rule for producing the original and the rule of authentication. In other words, so far as an evidentiary fact is offered for a particular purpose as being material to a certain issue

and relevant to a certain proposition, it must satisfy all rules applicable to it in that capacity." Appellant insists that the certified copy of the ex parte affidavit, which we have held to be inadmissible, was admissible for three purposes: First. To show that Albert did make a proper showing of the loss of the original certificate and compliance with other provisions of the statute to authorize the Commissioner to issue the duplicate certificate and to establish the validity of the duplicate certificate. This is a matter that was of considerable moment to the Land Commissioner and interested him solely at the time he was called upon to issue the duplicate; but we are now to consider it as an entirety under the general rules of evidence as affecting its admissibility and its probative force in this trial. It was not offered for this or any other special purpose, but for all purposes, and was so considered by the court. Second. Appellee insists that it was admissible to show continuous claim of ownership of the certificate of the land by Parry and Albert and those claiming under Albert down to appellees. It contains no statement by Gibson showing they ever owned the original, or that he ever transferred it to any one, and is the rankest ex parte hearsay evidence.

In reading the case of Booth et al. v. Clark, 34 Tex. Civ. App. 315, 78 S. W. 392, cited by appellee, in support of his contention, we find this language: "Appellant's first assignment of error attacks the finding of the court below that Wm. Booth became the owner of one-half of the certificate for his services in obtaining the same on the ground that there is no evidence to sustain such finding. The contention under this assignment is that the recital of Wm. Booth in the transfer of the certificate to David C. Booth, that he was entitled to one-half of the certificate for obtaining same, is not sufficient in itself to establish that fact. We agree with appellant's counsel that the recitals in this transfer, although the instrument is 40 years old, are not in themselves sufficient to sustain the finding that William Booth was the owner of one-half of the certificate at the time he transferred same to his brothers, and we do not understand the trial court to have so held."

In the case of Davidson v. Wallingford, 88 Tex. 619, 32 S. W. 1031, upon which appellee seems to ground his motion for rehearing, it is held that Mrs. Bickford, after testifying that her deceased husband had in his possession a certificate located on the land in suit in the name of plaintiff's ancestor, could not testify to statements made by her husband tending to show the transfer of the certificate to him by such ancestor and the loss of the transfers. We have not held that a verbal transfer of a land certificate is invalid. Without discussing the facts in the instant case further than is necessary to

make clear our holding, and compare it with the authorities cited, we call the attention of counsel to the "circumstances adduced in evidence" in the Davidson v. Wallingford Case, which are outlined in Judge Brown's opinion: "These circumstances were (1) the possession of the certificate by Bickford and his claim of ownership, if he did so possess and claim it." Aside from the ex parte affidavit of Parry and his bare declaration of ownership, there is no proof in this record of his possession of the original certificate No. 16, nor of his claim of ownership. (2) "The location of the land by him under that claim." The evidence of the ownership and possession of the duplicate certificate in this case by Daugherty and the proof of its location would tend to show that Daugherty did not own it when the alleged location was made. (3) "The payment of taxes by those claiming under the certificate." With the exception of the payment of taxes from 1908 to 1911, there is no proof in this record that appellee paid the taxes during all the years prior thereto. There is this further cardinal distinction between the Davidson-Wallingford Case and the instant case: It was proved in that case that about five years before the suit was brought one E. M. Phelps leased the land to E. Y. Thompson, who was one of the defendants in the suit, and that Thompson went into possession under the lease and coninued in possession until the trial, while in this case no possession, either actual or constructive, has been shown by appellee, and we find the same distinction running through all of the cases to which we have been cited in appellee's motion. We do not want to be understood as holding that proof cannot be made by circumstances. The circumstances themselves must, under the rules governing the admission of testimony, be admissible. Quoting from 1 Wigmore on Evidence, § 18: "The general principle is that the offer (of evidentiary fact) must be judged exclusively by its specific contents regarded as a whole. This principle leads to several consequences. If the evidentiary fact desired to be offered is in itself apparently irrelevant or otherwise dependent on other facts for its admissibility, the offer must contain a statement of the specific purpose or of all the other facts necessary to admissibility. If several facts are included in the offer, some admissible and others inadmissible, then the whole (if properly objected to) is inadmissible. In other words, it is for the proponent to sever the good and bad parts. Similarly, an offer of a fact for two purposes is erroneous if the fact is inadmissible for one of the purposes, though it would have been admissible for the other, if offered for that alone. An offer of a fact for an inadmissible purpose A is properly excluded, though the same fact would have been admissible for purpose B." Reference to the record shows that the certified copies of the affidavits were not offered

by appellee to show the loss of the original and compliance with the provisions of the statutes to authorize the Land Commissioner to issue duplicate certificate, but were offered. as a whole for all purposes.

[12] The rule above announced prevails in this state, and it is held, in Cole v. Horton, 61 S. W. 503, and Robinson v. Stuart, 73 Tex. 267, 11 S. W. 275, that "where evidence is offered as a whole and part of it is incompetent and objected to on the ground of the incompetency or irrelevancy of such portion, and no offer is made to introduce the relevant portions only, it is not error to exclude it in its entirety." And in O'Brien v. Hilburn, 22 Tex. 616, it is said: "It is well settled that questions upon the admissibility of evidence will be considered and responded to by the court in the very terms in which they are propounded. If evidence proposed is not admissible for the purposes for which it is proposed, on objection to its admissibility, the court will not inquire whether it might be admissible for any other purpose. It will suffice, to sustain the objection, that it is not admissible for the use the party proposes to make of it." As was said by Judge Gaines, in the Davidson v. Wallingford Case: "The broad question to be determined by the jury was: Did P. B. Bickford become the owner of the certificate? Applying the language to the instant case, the question is: Did Parry become the owner of the Gibson certificate? None of the authorities cited in the original brief or in the voluminous motion for rehearing tend to convince us that this fact has been established by legal and competent evidence, and that is the issue which we undertake to make clear in the original opinion. We have again carefully reviewed the authorities bearing upon the testimony of the witnesses Albert and Parry, wherein they seek to prove ownership, and we still adhere to the opinion that the evidence was subject to the objections urged against it, and the authorities cited by appellee have tended to confirm the opinion. We were in error in holding in the original opinion that the transfer from Albert to Daugherty was not admissible as a recorded instrument.

We take advantage of this opportunity to admonish counsel that the intimations and imputations of professional misconduct contained in the motions for both parties are uncalled for and out of place. There is nothing in this record tending to impeach the professional integrity of any lawyer connected with it. There has been no violation of any article of the Penal Code nor of the strictest canon of professional ethics, and the matter contained in the filed papers of counsel for both sides upon this question is beneath the dignity of the profession and can serve no good purpose. We deplore the fact that such statements have been made and feel that, upon reflection and reconsideration

by counsel, they would be glad to withdraw such scandalous matter from the record.

The motion for rehearing is overruled.

HUFF, C. J. (concurring). As I view this case, the crucial point in it is the transfer of the original certificate from Gibson to Parry. I think this court correctly held that the statement of Parry that he owned the original certificate was a conclusion. If so, then an important link in appellant's chain of title was broken and appellee failed in his case. Aside from this conclusion, the testimony was not sufficient to warrant a judgment for appellee.

[13] I recognize the rule as settled in this state that the transfer of a certificate from the original grantee before its location may be shown by circumstances—and assuredly is this true after a long lapse of time and after the death of the witnesses. In this case, however, Parry, to whom the certificate was traced, is still living. He could state the facts with reference to the certificate and his connection with it, the source of his possession and the circumstances connected therewith. Under this condition, I do not believe his conclusion should be accepted as a fact. Gibson was dead; the record shows Parry did not know him in his lifetime. Circumstances may be resorted to for the purpose of showing a transfer out of Gibson. Parry being alive, I do not think subsequent dealings should be looked to alone as circumstances to show title in him. Apparently there is better testimony accessible, and, when such is shown, I do not think the weaker should be resorted to. Circumstances doubtless may be looked to ultimately to ascertain whether the title to the certificate passed out of Gibson.

[14] The original opinion filed in this case is undoubtedly sound in the conclusion announced that the affidavits on file in the Land Office, made to procure the issuance of the duplicate, were not admissible to prove ownership in Albert and Parry, or of the truth of the facts therein stated; but this court has reached the conclusion that they are admissible for the purpose of the identity of the duplicate and original and the duplicate of the one by virtue of which this land was located (Jones v. Reus, 5 Tex. Civ. App. 628, 24 S. W. 674), and for the more potent reason that, under the law as it existed at the time the duplicate was issued, it could issue direct to the person who claimed the original. The law now is that the duplicate shall issue in the name of the original grantee, whoever may be the claimant. The issuance of the duplicate to Gibson by the Land Commissioner, in the absence of any fact showing the grounds or why issued, would make a prima facie showing that Gibson at that time was the claimant and procured its issuance. If the evidence of the certified copies from the Land Office are true, manifestly he did not obtain its issuance. They show he did not apply for the duplicate or obtain its issuance. While the law gives the true owner of the duplicate all the rights secured thereby, even though the party securing its issuance had no right to do so (Seibert v. Richardson, 5 Tex. Civ. App. 504, 23 S. W. 899), it ought not give the named grantee therein the benefit of the presumption when the facts are at hand to rebut the presumption. This would be putting the bona fide vendee of the claimant at a disadvantage in the contest over the then ownership of the duplicate, which it occurs to us is unjust. Baldwin v. Roberts, 13 Tex. Civ. App. 563, 36 S. W. 789, on page 792, par. 3, col. 1.

The appellant in this case objects to the introduction of these proceedings in which their now claimed right took its life, without which the duplicate would have no existence, and hence there would have been nothing over which to contend. For over 30 years this claim has lain in the Land Office unchallenged by appellants—a notorious assertion of ownership. The case of Crosby v. Ardoin, 145 S. W. 709, cited by appellant and quoted in the opinion of this court, says: "If the validity and regularity of the issuance of the duplicate was an issue, then the affidavit, advertisement, and certificate would be properly admissible in evidence to show that the statutory prerequisites had been complied with." That the grounds stated for the admission of such papers are not the only ones is shown by the cases above cited. It is admissible to show any fact properly provable by such record. It will be noted in examining the law that the change in the law with reference to whom the duplicate should issue was made shortly after the issue of the duplicate in this case. To those acquainted with the history and administration of the Land Office, the issuance of the duplicate in the name of Gibson will not possess great probative force. The issuance of the duplicate was almost contemporaneous with the amendment of the law, and it is significant of a practice which afterwards became the law.

[15] The bill of sale from Albert to Daugherty transferring the duplicate this court held admissible on account of its age. I think it also admissible because at the time it was recorded it was a chattel real. It had been located, the land surveyed, and the field notes returned to the Land Office at the time of its registration. When it was recorded, it was an evidence of an interest in the land. I think, also, the recitals to the effect that Albert had purchased the land were admissible, not for the purpose of proving such fact was true, but as evidencing the claim of ownership while in possession of the certificate, and by what right it was held. Such I understand to be in effect the holdings of Lochridge v. Corbett, 31 Tex. Civ. App. 676, 73 S. W. 97; Davidson v. Wallingford, 88 Tex. 619, 32 S. W. 1030; Herndon v. Dav-

enport, 75 Tex. 462, 12 S. W. 1111; McDow v. Rabb, 56 Tex. 158; Bounds v. Little, 75 Tex. 316, 12 S. W. 1109; Fisher v. Ullman, 3 Tex. Civ. App. 322, 22 S. W. 523; Mooring v. McBride, 62 Tex. 312; Wells v. Burts, 3 Tex. Civ. App. 430, 22 S. W. 421. I am also now of the opinion that the evidence of Parry, "that I sold certificate No. 16 to Stephen Albert in due course of trade and received from him the value thereof at the time and delivered same to him at my place of business," was admissible and was not a mere conclusion, but what purports to be a fact. Lochridge v. Corbett, supra, touches the instant case at two or three vital points, and I regard it as being in many of its features analogous to this.

I agree to a reversal of this case for the reasons first stated and without any purpose of trenching upon the well-recognized rule that the judgment of the trial court should not be disturbed, if there is testimony upon which it can be sustained, but believing, as I do, Parry's statement of his ownership was an opinion and not admissible, and the link in the chain of title thereby destroyed, as I view the case, there was nothing else to do but reverse.

HENDRICKS, J. (dissenting). When the opinions of Justice HALL in the above case, on the motion for rehearing, were under consideration, the writer was absent during the latter part of the week before the Saturday, May 3d, at which time they were handed down, being present, however, the day of their rendition; but since the delivery of said opinions and the opinion by Chief Justice HUFF in this cause, upon a reconsideration of the record in this cause, I am of the opinion that the judgment of the lower court should have been affirmed, and to that extent I dissent from the Chief Justice, who agrees with Justice HALL that this cause should be reversed and remanded, the former disagreeing, however, from the latter as to the admissibility of certain testimony, the opinion of each reflecting their views upon the issues involved and indicate their divergence in the application of the law upon the subject.

From the statement of the case I refer to the preliminary part of the original opinion of Justice HALL and will not attempt to distinguish the points of difference, except to write my views to the extent of a review of the testimony and an attempted application of the law thereto, why I think the motion for rehearing in this cause should have been granted. The opinion of Chief Justice HUFF in this case, who agrees with Justice HALL to that extent, sharply raises the question of the sufficiency of the proof of title and ownership, under the circumstances of this record, of the original certificate in Parry, who is still alive. And according to my views of the case I believe it to be the crux of the whole matter; however, in determining this question, a review to a certain extent of other matters, in connection therewith, and of the evidence relevant to other features of the title, bear upon the question of the sufficiency of the proof as to title in Parry. As was said by Justice Gaines, in the case of Davidson v. Wallingford, 88 Tex. 624, 32 S. W. 1032, although the facts there are some different from the circumstances here: "The broad question to be determined by the jury was," Did Parry "become the owner of the certificate? And this was to be determined from the circumstances established by the evidence."

If Parry had the title to this certificate— which I will revert to later—I think it is conclusively shown that he transferred the same to Albert; that the original certificate was destroyed; that Parry made a presentation of proof and sufficient claim of ownership to the Commissioner of the General Land Office for the purpose of obtaining a duplicate certificate and the state patented the land; that he caused the certificate to be located upon the particular land in controversy; that prior to patent he transferred the same to J. S. Daugherty; and that the present appellees, through successive conveyances from Daugherty, are the holders of whatever title Albert possessed. A reading of the statute with reference to the duplication of certificates based upon the loss or destruction of original certificates clearly indicates that it is the duty of the Commissioner of the General Land Office, within the scope of that statute, to deliver the duplicate certificate (if no controverting claim of any opposition holder has been made to him) to the claimant who proves ownership and loss of the original certificate, and who registers sufficient evidence of title satisfactory to said Commissioner of his claim of said original certificate. Evidently this was done by Albert. While it is not direct proof of title, it is a notorious act by Albert with reference to a claim of title and at a time when the evidence shows that he was in possession of such certificate.

The appellant in this cause introduced testimony which proves the location of the duplicate certificate by Albert; and the transfer in writing by Albert to Daugherty of the duplicate certificate after location, although before patent, and being an instrument over 30 years of age, recorded in the records of Baylor county, at a time when it properly could be recorded in that county, of course conveyed whatever title Albert had, and in 1885 the grantee, J. S. Daugherty, obtained a judgment against Gibson in the district court of —— county (void it is true, on account of the death of Gibson), but reciting a recovery against the latter of the land in controversy—a notorious and public act upon the part of Daugherty of a claim of title by him at a time when he was in possession of the duplicate. And J. C. Paul, who is a tenant in common with Rogers, and the

appellees in this suit, has been paying the taxes upon this property since 1905. There is no direct proof of the payment of taxes upon the land prior to that time, no evidence that they had been paid or unpaid, unless the circumstance of the approval of said title by the attorneys of Paul upon examination of same would constitute such proof—weak, however, if competent for that purpose—but it is conclusive that none of the Gibson heirs have ever paid any of the taxes upon this property, and P. C. Gibson, a man 50 years of age, and a son of John A. Gibson, on account of his age at the time his father earned the certificates in question by his services to the state, of course has no intelligent recollection, as he testified, in regard to these matters; but did state that on investigation of the records at Austin in later years he found that the records show that certificates to 1,000 or 1,100 sections of land had been issued to his father, but that he did not make a thorough investigation to the lands patented by virtue of such certificates, and the evidence shows his direct attention was called to the condition of this title just a short time prior to the institution of this suit. And the evidence is conclusive of an entire absence of claim since the father's death in October, 1877; several of the children and heirs ranging from 48 to 61 years of age, including their mother, and the wife of Gibson, now something over 80 years of age, being still alive, and several of the children testifying in this cause. The testimony in the case exhibits an enfeebled condition of the mother, varying some, however, as to the present strength of her mind; one of the married daughters stating: "Her physicial condition is very good. * * * Her memory is not strong and clear, but she understands." The record is that John A. Gibson died intestate, no evidence, however, of any administration, and hence no testimony that these certificates were ever inventoried as an asset of the Gibson estate, if he had any, at the time of his death. Mr. Paul testified that his grantor delivered to him the original patent for this land when the deed to him and his cotenant was delivered.

The appellants introduced the testimony of Parry, which they had taken, to the effect that he had sold certificates to Edward White and Stephen Albert, inferable as an occurrence some time in the years 1874 or 1875, and that during this period he sold as many as 500 certificates, having testified previously that he had bought and sold only the original certificates. It is true that the record shows that this particular testimony of Parry, as to the sale of certificates to White and Albert, that Parry then stated he did not recollect the numbers, but there is the following testimony, in another deposition, taken prior to that time, which, as against the incomplete and insufficient objections made by appellants, I am unable to see any

real controversy as to its admissibility (it can only go to the weight and credibility, which we are unable to consider as against the judgment of the trial court) addressed to the identity of the certificate as well as to the sale of same by Parry to Albert, and which I set out in full as follows:

"Cross-Int. No. 3. Q. Isn't it a fact that you are not positive as to the numbers of certificates that you did sell, if you ever sold any, to Stephen Albert, or to any one else, and isn't it a fact that you have heretofore made affidavit to the effect that you did not know personally as to these facts, and that you had no data from which to testify? Date of affidavit, July 3, 1876. A. I am positive as to the numbers of the certificates sold to Stephen Albert and Edward White. I did not make such an affidavit as you describe, but I did state in an affidavit dated July 3, 1878, that to the best of my recollection the numbers as set forth by me were correct, but, after consideration and reflection, I am positive that the numbers as stated by me, of the certificates mentioned, are correct, and I know same to be so."

"Defendants' bill No. 8: (1) When this answer was offered in evidence the defendants objected to the part of it which read, 'I did state in an affidavit dated July 3, 1878, that to the best of my recollection the numbers as set forth by me were correct,' because that part of the answer is not responsive to the question. (2) The defendants further objected to the part of said answer which read, 'But, after consideration and reflection, I am positive that the numbers as stated by me, of the certificates mentioned, are correct, and I know same to be so,' because that part of the answer is not responsive to the question and is an opinion and conclusion of the witness."

I believe the first objection, upon a careful consideration of the record, is untenable. It is true that the question says in effect, Isn't it a fact that in the affidavit of July 3, 1876, you have heretofore stated that you didn't know personally as to the numbers of the certificates that you did sell to Stephen Albert, and that the answer refers to an affidavit of July 3, 1878; but the reading of the affidavit of July 3, 1878, and it being the only affidavit in this record that it is shown that Parry ever made, is clearly the one intended to be referred to by appellants. And, if so, the answer of Parry is responsive to the question; and there is no objection to the other answer of Parry that he is positive as to the numbers of the certificates sold to Stephen Albert and Edward White, and the second objection urged therein is clearly frivolous. It seems to me that this testimony, properly considered, reaches some distance in this case against the appellants who elicited this testimony, but who objected to its introduction (which probably they had the right to do); however, as they were inquir-

ing as to the number of the original certificate Parry had sold to Albert and the further inquiry, if it were not a fact that he did not know personally as to the fact of the number of this certificate and the sale of same, and that he had made affidavit to the effect that he did not know personally as to these facts, which with this connection with the affidavit inquired about, with the answer thereto, as to the matters attempted to be elicited, makes the affidavit original testimony. This, with the affidavit of Parry, having been offered to the Commissioner of the General Land Office as a part of the evidence of Albert's title to the original certificate, for the purpose of obtaining the duplicate certificate, in lieu of the former. Chief Justice HUFF, in this cause, has pointed out the change in the law, as to the party in whose name the duplicate certificate is issued—at the time this one was issued the duplicate could have been issued in the name of the claimant, which was, however, issued in the name of Gibson, and a short time thereafter amended to the extent of making it the duty of the Commissioner of the Land Office to issue the duplicate to the claimant, however, in the name of the original grantee, and upon this point arguing the admissibility of the affidavit of the claim of ownership in Albert for the purpose of rebutting the prima facie presumption that might otherwise prevail on account of the issuance of the duplicate in this case directly to Gibson, and with reference to which position I understand Justice HALL agrees.

This affidavit of Parry's referred to by him upon inquiry by appellants was admissible to the Commissioner of the General Land Office on account of the loss of the transfer accompanying the original certificate and admissible in this case on that account in a limited sense; hence I revert to the decision of the Chief Justice and Justice HALL in this cause as to the insufficiency of the evidence of ownership of the original certificate in Parry, and the title in him, which necessarily carries with it the sufficiency of the proof through Parry of a divestiture of title and ownership out of Gibson—to my mind the strongest position which can be assumed in this record, arguing the failure of the plaintiffs in establishing their title in the trial court, appellees here. The existence of Parry weakens the testimony in this respect, but I am unable to derive the conviction from the authorities that it is a prerequisite—it is an incidental going to the weight of the testimony. I think the proposition is: Is the evidence sufficient, upon the whole record as an original question, to prove that fact? It is conclusive that Parry had possession of the original certificate; his sale and delivery established that fact; there is a successive and continuous claim of ownership through Parry from Gibson of the certificate; there is no claim of this original cer-

tificate by any of the Gibsons for over 35 years; there is no imputation addressed to a candid mind as evidence that Parry stole or forged it. It is common knowledge that in the early history as to transactions involving the transfer of these certificates, being mere chattels, they passed from hand to hand, often by a blank indorsement of the original owner to be filled in by the grantee, and, as expressed by Justice Head, in the case of Fisher v. Ullman, 3 Tex. Civ. App. 325, 22 S. W. 524, "the possession by Ferguson of the certificate with the blank indorsement thereon prior to its location, and that he thereafter had it located, unexplained, was prima facie evidence of title in him"; the same judge further saying in the same case, "That actual possession of personal property is prima facie evidence of ownership seems to be the rule everywhere." It is true that a charge to a jury in the language of this latter statement would be improperly casting the burden of proof and also be upon the weight of the evidence, and the fact of the possession may not of itself, strictly speaking, constitute prima facie evidence of title, but inherently it is a strong circumstance of title when connected with other facts.

Of course, the lack of a blank indorsement, the existence of Parry, whose testimony in this record is not as complete as it should be, and the lack of a written transfer of some kind, are circumstances in favor of appellants. But, on the other hand, we have this man dealing with this certificate as his own, and as to which the evidence is conclusive, taken in connection with his business of dealing in land certificates, having handled several hundred original certificates within the outside period of two years, and during which time Albert came into possession of the certificate from him, and in connection with his assertion which I am now convinced, with the Chief Justice, is a statement of a fact, that he sold certificate No. 16 to Stephen Albert in due course of trade, and received from him the value thereof at the time, and delivered same to him at his place of business, and in connection with the pertinent circumstance in this record of a lack of assertion of any claim by any one else for over 35 years, no evidence in this record of any declaration of claim of ownership of any other person during that period, which with the original patent in the possession of the present owner of the land and the notorious claims of ownership evidenced in this record, by the parties to whose title the appellees succeed—I am inclined to think all this is sufficient testimony upon which to predicate a finding of ownership and title in Parry, which conclusion necessarily carries with it the divestiture of title out of Gibson. Gibson is shown to have died in October, 1877, some two years after the time Albert is shown to have acquired title to the original

certificate; no claim having ever been asserted by him.

In the case of Huff v. Crawford, 89 Tex. 220, 34 S. W. 609, a certificate was issued to Garner, who had indorsed the transfer of the same to Myrick, dated the 8th of June, 1838, and in September, 1872, one Cornelius had possession of the certificate with an appropriate transfer from Garner, who also had the land located and patented; and the question of the ownership of this certificate between the heirs of Myrick and the vendees of Cornelius were in issue, the proposition of delivery or nondelivery to Myrick being the real question in the cause, and Justice Brown said: "The fact that the certificate was found in the possession of Cornelius accompanied by a claim of ownership, the location and survey of the land for Cornelius, his claim of ownership and sale of the land after location, the taking possession by his vendees and the payment of the taxes thereon, connected with the absence of any claim to the certificate or the land made by the heirs of Myrick for the time shown, were circumstances from which a jury might have found that the delivery of the certificate and transfer was never made, either actually or constructively, to Myrick. This testimony made an issue of fact which should have been submitted to the jury, and it was error for the court to assume the existence of a fact thus controverted." I do not mean to say that this case, on the facts, is wholly analogous, as each opposing party in the cause seems to have had a written transfer, which, however, might have balanced each other; but it is pertinent to some of the elements, and especially to the matter of nonclaim during a long period of time, where there is a belated assertion of title by heirs or others, as against the one in possession of the certificate, and which seems to be considered as a potent circumstance by numerous decisions, where the fact arises. In reading the authorities, I am unable to deduce any certain rule as to prerequisites of the proof of the title and ownership of land certificates, creating the presumption of the grant of this character of interest from the original owner. The only rule, if any exists, as to the quantum of this proof, when it is referred to the matter of sale of the chattel itself, is one that the sale and transfer of this character of personal property is analogous to the requirements of the proof of the transfer of any other personal property—perhaps not wholly so, but difficult to determine the distinguishing difference. I would think that a man who was dealing in horses to the extent that he sold some 500 of them during a period of two years, and the evidence of possession by him of one of that number, and the sale of same to a third party, without a bill of sale, coupled with the vendor's possession, and the continued ownership of vendees, without any complaint for a considerable length of time

159 S.W.—22

that when the assertion of an opposite claim of title by heirs was made, by the mere proof of prior title in the ancestor of the heirs, in the horse in controversy, without proof that the horse had been stolen, or other circumstances tending to show that the ancestor had not parted with the title, and without any proof of any declaration of any claim of ownership by the ancestor during the proper period of time, when such declaration would be admissible, would in this character of case reject the claim of the opposing claimants to the horse and carry with it the title of the horse to the opposition vendees.

While not wholly similar upon the facts of this case, I am inclined to think that the opinion of Chief Justice Garrett of the Galveston court, on rehearing, in the cause of Stafford v. Kreinhop, 63 S. W. 166, in so far as the principle enunciated therein is applicable to the case here, and is as follows: "We now adopt the conclusion of the trial court upon the presumption of the transfer of the certificate, as we find it supported by the circumstances that Baker dealt with the certificate, and evidently had it in his possession; that he caused it to be located, and received the patent, which he delivered to Haggerty when he sold the land to him. These facts, aided by the further facts of long possession and payment of taxes by Baker's vendees, and inaction by the plaintiff, support the judgment of the court below." I am unable to agree with Justice HALL as to his application of the rule of evidence to this record, when he says, "reference to the record shows that the certified copy of the affidavits were not offered by appellees to show the loss of the original and compliance with the provisions of the statute to authorize the Land Commissioner to issue the duplicate, but were offered as a whole for all purposes," and quotes authority where evidence is offered as a whole and objection is made to an irrelevant or incompetent portion, which is sustained; and another authority where proffered testimony is not admissible for the purpose for which it is proposed, and objection is made and sustained, although it may have been admissible for some other purpose. In both cases it is the duty of the one offering the testimony to reoffer the same. This cause having been tried before the court and the testimony clearly admissible for certain purposes, after judgment has been rendered by him, I think the rule laid down by Justice Collard, in the case of Wells v. Burt, 3 Tex. Civ. App. 436, 22 S. W. 421, applies, and which he expresses as follows: "Appellants ask a reversal upon the ground that the court erred in admitting the testimony of Joseph Henderson, to the effect that Miller told him that he owned the house and lot between 1857 and 1860, and that his deed was burned before it was recorded. It was permissible to prove that Miller, being in possession, claimed the prop-

338 SOUTHWESTERN REPORTER (Tex.

erty and that the deed under which he claimed was lost. The evidence was admissible for these purposes. The case was tried by the court without a jury, and it will not be presumed that the court gave other than legal effect to the testimony. If the trial had been before a jury, the judge should have limited the effect of the evidence, by a charge to the legitimate purpose of claim of ownership, the existence and loss of the deed; but there being no jury, and the evidence being admissible, it will not be presumed that the judge misapplied it. Lindsay v. Jaffray, 55 Tex. 639, 640; Clayton v. McKinnon, 54 Tex. 206; Melton v. Cobb, 21 Tex. 539." I am authorized to say that Chief Justice HUFF assents to this view.

Considerable stress has been laid upon the question of possession in this matter as a necessary circumstance of proof of title. There is no proof of actual possession by the vendees, but there is constructive possession by the payment of taxes for several years, and, while stress is made in some of the authorities upon possession, I do not understand that, if the circumstances were sufficient to prove a verbal sale, the lack of possession, in view of the sufficiency in other respects, would destroy that which was otherwise sufficient. The case of Arthur v. Ridge, 40 Tex. Civ. App. 143, 89 S. W. 17, decided by C. J. Gill, is to some extent applicable upon this question. It is true there seems to have been a continued payment of taxes in that case, and the lands were wild lands, which is not shown in this record, unless you would attempt to assume it as a matter of public history to a period of development and settlement in that country, though it is not shown when such period began; but Justice Gill really decided the cause, as I gather it, upon the following principle, the presumption of the execution of a conveyance in question there being wholly analogous to the question of a presumption of a grant of the certificate here: "It is generally true that some sort of possession is required to authorize the presumption of a grant, and when the court indulges the presumption as matter of law it is perhaps invariably required. But, where the issue is one of fact for the jury, it is not perceived why the execution of a conveyance may not be established by circumstances as any other fact the existence of which a jury may be called upon to determine." Judge Gill, in the same case, quoting from Bounds v. Little, 75 Tex. 316, 12 S. W. 1109, decided by Chief Justice Gaines, who in the Bounds Case was discussing the question of the presumption of grants, and a part of which we extract as follows: "Juries are bound to decide according to the actual truth of the facts. * * * It would therefore be absurd and inconsistent to say that a jury was not to be allowed to find according to the real fact, when they

are satisfied that an actual conveyance has been executed."

Upon the whole record, I think this cause should have been affirmed, and respectfully record my dissent from the majority opinion of the court reversing and remanding the cause, and, except as to the reasons advanced by Chief Justice HUFF for the reversal of the cause, I assent to his opinion in all other respects.